Thank you, Your Honor. May it please the Court, Nicholas Markey, on behalf of Mr. Cloud, I would reserve two minutes of rebuttal if required. As this Court is aware, this comes from the Eastern District of Washington in which Mr. Cloud was charged with murder in the first degree and aiding and abetting. After a jury trial before the District Court, he was convicted as In the course of the trial, the government moved to introduce evidence of a carjacking as well as a shooting and evidence of an escape and photographic evidence of weapons that were allegedly used in the escape. Mr. Cloud opposed the introduction of that evidence as well as opposed the evidence on the carjacking as well as the knife and the escape charge. I've also raised two additional arguments, one being shackling of the defendant as well as motions to dismiss. On both of those arguments, Your Honors, unless the Court has questions, we would submit on those. My primary focus today is on the introduction of the carjacking incident into Mr. Cloud's murder case. You know, I have a hard time when I'm looking at this. I think that you don't really address whether the carjacking evidence was inextricably intertwined with the charge defense in your brief. And it certainly seems to be that there, because it ends up being that the vehicle in the carjacking is the vehicle that there's certainly evidence to indicate that the deceased was put in the trunk of that car and then that car is recovered and there's evidence in the trunk that she'd been in there. And so it's pretty hard to say how that car, you've got to attach that car to your client and your client's not the registered owner of it, but he was in that car, not that much previously doing the carjacking. So there definitely, that car has to be tied in. It's very inextricably tied in. So you don't really address how, you know, when juries hear cases, you know, you can't just like let things just sort of plop in and you can't sanitize things to the point that no one understands what's happening. And that car certainly seems that it's inextricably tied to the crime scene that the victim was put in the trunk and that it's found near her body and all of that. So I find it hard on the car. They also don't recover a weapon and your client is in possession of a weapon there. I think your best argument might be, why did they have to say that he shot the carjacking person? But then I guess what I would say there is, it's all relevant, but then on the prejudicial prong, generally when we look at prejudice, it's not whether it's damning to you. It has to be more like it just inflames people to the point. But he's charged with murder in the carjacking. He shoots the person, but she doesn't die. So it's a much less terrible situation than what he's charged with. And it's also, I think she superficially handled her shooting. Then I guess what the prosecutor argues is that somehow the victim and the murderer got killed because she was a snitch and there's a snitch element in the car. But tell me about this intertwining because that's a really important part about all of it. I don't see how you pull out. Well, I think what the court is saying is the primary issue that we argued at the district court level was the carjacking in per se, that the shooting of T.K. and that incident was not a, you know, not an intertwined and two, it was not, you know, to the extent. Well, but let me ask you this, Mr. Is it Markey or Markey? Markey, Your Honor. Markey. Well, let me ask you this. If you're a good defense attorney and there's evidence that the victim of the homicide was in the trunk of that car and the car was found in relative proximity to the body, but they missed it the first time, right? Yes, Your Honor. And your client is not the registered owner of that car. So if nothing comes in about that, that leaves you free to argue that, well, that car was some, it's registered to someone else. My client has nothing to do with that car. When in fact, there's an incident that says few weeks before your client was driving that car. So how, how isn't that relevant? Well, what I'm saying is the relevancy of it is he was seen driving the car and there was evidence that the government put that in. The car was allegedly seen at the murder scene by, I believe it was Mr. Culp. The car was then found with the blood scene, blood in the trunk of the car. But what we're saying, Your Honor, is the fact of the shooting of TK and the carjacking there was, if it was relevant, it was far too prejudicial. The problem is further compounded is it's not like, if this was just, if the government were just to rely on the statements of Mr. Culp and testifying of what Mr. Cloud allegedly did, that would be one sense in the sense that limiting instruction may have been somewhat helpful. But in this case, the state was, the government was allowed to present the plea agreement for the carjacking charge itself, the separate case, the plea agreement, and the transcript. And that is what our primary argument was to say that it was so prejudicial that it outweighed any relevant evidence because it essentially sanctions or it gives the jury more probability or more feeling that he is acting towards his propensity of a violence because he's already been charged in something and he's admitted it. Now, remember, if I could jump in, please. My understanding, I share Judge Callahan's concern. My understanding of the district court's ruling is that the prosecution was not plopping things in, not left to do that, as Judge Callahan said, but that they were entitled to illustrate a cohesive picture to the jury, hence the reference to the car. But I hear you saying that the government had separately introduced evidence through, I think, Mr. Culp's testimony that your client was seen driving the car. I think it was seen at the crime scene with something being loaded into the trunk. I think there's evidence that he bragged about stealing the car. Is your argument that the government could have painted its picture, so to speak, with that evidence short of introducing the more inflammatory evidence of the actual shooting? Yes, Your Honor. Did you ask, did you make that argument to the trial court? Your Honor, I believe I made that argument when the argument when they introduced the documents that were object, I objected to the plea agreement and the testimony. Okay, so now I hear what you're saying is in terms of whether it's inextricably intertwined, what you're really arguing, I think, I don't want to put words in your mouth, I think you're really arguing 403. That extra, the extra evidence that really indicated that with the plea agreement that allowed the jury to know that he'd actually pled to stealing the car and shooting another person, that that was maybe admissible under 404B, but that it was, it should have been excluded under 403. Again, I do not want to put words in your mouth. Have I got that right? Yes, you do, Your Honor, and I think I believe we briefed it at page 14 of our briefing. So you're not contending, you're not contending it wasn't admissible at all? Well, I'm still contending it wasn't admissible as to the four points. I understand that I have a problem getting away from the inextricably tied because the car, there was evidence from Mr. Culp that he was seen driving the car and Mr. Culp testified. It does fulfill, they're relying on an overall scheme, the whole that Mr. Culp suspected that the victim was a snitch. There was really never any evidence that pointed to that other than one conclusionary statement by Mr. Culp. The trial court was given two theories of the government's case. One being that the victim was killed because she was in a high-speed chase with Mr. Culp, Mr. Cloud, and he had had information that she was possibly a witness. That was never presented to the jury. The government did raise it. Then we moved to she was killed because she was somehow, in Mr. Cloud's mind, a snitch. There was nothing other than Mr. Culp's conclusionary statement that he said she was a snitch that would support how these two cases or incidents tied into each other. That's where we argued that point. It was one that they weren't a common scheme or tied together in any manner, and two, if it is evidence that should come in, it was far too prejudicial to be allowed in given the evidence that was presented in the trial. If it was error, you say it can't be found to be harmless error. Is that what you're saying, even though there was quite a bit of other evidence that tied your client to that thing? Right. If we turn to the government's argument that it's harmless error because there was so much of this evidence, again, we get to the point where the use of the plea agreement and the transcript made it too prejudicial because it's somehow validated because he'd been in a court, tried, that it somehow elevated that prejudicial evidence. I know you want to save two minutes. I have one quick question. What's your best argument that first degree murder is not a crime of violence? There's not much that I can say on that, Your Honor. We would submit. Okay. All right. You have two minutes and 45 seconds. Do you want to save that? Yes, Your Honor. Thank you. All right, Mr. Hanlon. May it please the court, Tom Hanlon, a parent of the United States. I'm going to jump right into the 404B argument since that appears to be where most of the argument's going here. One thing I would like to correct is Mr. Markey indicated that Mr. Culp's made a snitch. That was not a statement that originated in Mr. Culp's mind. Those are direct words from the defendant at the crime scene at the time of the murder was that the reason he killed her was because she was a snitch. So I just wanted to make that clear in regards to the- Excuse me, on that point, I'm sorry to interrupt. Zoom makes it hard, but on that point, when you say those are his statements at the crime scene, and who did the jury hear that from? They heard that from Patrick Culp, Your Honor. Right. I think that's what we're referring to. That's fine. Thank you. Okay, thank you, Your Honor. In regards to the intrinsically intertwined evidence, 404B evidence, I think the facts, some of the facts are important. One, that in March 2016, the victim, Mr. Culp's, and the defendant, Mr. Cloud, were all living at the Barks Road address. We also know that Ms. Woodward lived at that address, and she testified that Mr. Cloud, the defendant, had lived at this property for some time. She advises she used to feed him. She advised that in March 2016, all of a sudden, Mr. Cloud shows up at the property, and he has this black car. Mr. Culp's testified that he also saw the black car, and the defendant admitted to him that he had got this car because he had carjacked Crystal Tequila with a firearm. So those are facts that were introduced at the trial. The government's position is that those facts, and we submitted to the district court, were inextricably intertwined with the current offense, and we relied upon this court's precedent in Dorsey. In Dorsey, there was a gentleman who was charged with, it was a car trafficking scheme, and a witness who was going to testify a grand jury got shot. At the trial for that shooting, the government sought to introduce evidence that Mr. Dorsey had a firearm several months prior to that crime, and ultimately, the court determined that that evidence was relevant. It was admissible because it showed that Dorsey had the means to commit the charged crime. Here, we know from the carjacking that the defendant possessed a firearm not months before, but weeks before the murder of Felina Metzger. We know the defendant possessed the car in which her body or her blood was found, and her DNA was found on the carpet fibers. We heard testimony at the trial from Patrick Culp that the only person that ever drove that car at the Barksrod Road address was the defendant, Mr. Cloud, and Mr. Cloud was the only person that had the key to that car, and we heard testimony at the trial that the key fob and the key were found where the car was abandoned not too far from Miss Metzger's body. All of those facts, and I just rattled off a couple of them. You've given a much longer list, but it seems to me that those facts are what defense counsel's relying on in saying that the jury didn't need this extra bit of evidence that was so very prejudicial. What's your response to that, please? I think the government's position that it goes to the motive. I mean, if you shoplift, Mr. Cloud believes that Miss Metzger, that she's somehow an informant, she's a snitch, she's cooperating with the police, something's going to happen to him. If he commits a shoplift and he thinks she's going to snitch to the police on that, he's not going to kill her. If he stole the car and there's a superficial wound or something, he may not think he's going to kill her, but he carjacked somebody and shot somebody. Presumably, in his mind, he's thinking, I'm going to prison. He's convinced himself that she's a snitch. To avoid prison, he's going to do the greater harm, kill her, to remove the evidence. At this point, you're sort of filling in some blanks that at least I didn't get from the briefing at all. Did the jury... I apologize, Your Honor. Not at all. This isn't a criticism. We've got a lot of cases this week, so maybe I misunderstood it, but in terms of just connecting the dots, did the jury here, did you argue that he was afraid that the victim was going to snitch about the carjacking specifically? Yes. He believed that she was a snitch. That would be helpful to me if I understood that that's what it was. I kept looking for a motive, what was going on in the bigger picture. I think that maybe it's not clear. That's what we submitted to the district court that we argued that the motivation for the killing was that she was a cooperative witness of snitch regarding the carjacking. That's what the court ultimately said. Regarding the carjacking. We argued the carjacking and the discharge of the firearm to the district court judge as the motive. The district court judge then said, he then repeated those facts to the government and said, under that basis, I'm going to allow you to admit that evidence as motive under 404B. That's helpful to me. Do you happen to have that transcript, Paige? I do, Your Honor. If I could have just a moment, please. Sure. Thank you. I'm looking at excerpt of record 63. The district court observed that Mr. Cloud committed the carjacking, shot someone to steal the car, and had not yet been caught, and then understood that his victim, Ms. Metzger, knew about that and was telling the police about that, which would lead to Mr. Cloud getting arrested for that crime. That could provide the motive to kill him, to kill Ms. Metzger. Thank you, Your Honor. Did you argue that in your closing statement? I believe that I did, Your Honor, because that was the whole motive for the crime was the carjacking, and that's why he killed Ms. Metzger, and that was the evidence at trial from Mr. Culp's. Okay. What about, let's just say, let's say, inextricably, that comes in, there's motive, there's this, that. Why do we have to say that he discharged the weapon? It's the discharge of the weapon that makes it so relevant to the motive for the killing. It's the discharge of the weapon that's going to lead him to believe, this is the sentence, this is what I'm going to go to prison for, this is why I'm going to get in trouble, because not only did I carjack somebody, but I shot a woman in her car. That's the motivation for the first-degree murder. Because of that crime, that's why he had to commit the greater crime. Okay. If it, let's just say, if, in fact, that was, that maybe, if, how do we analyze prejudice of that shooting relative to the crime that he's charged with? I think that any evidence is going to be prejudicial in the case. It's the government's position that the fact that he shot somebody is a much less serious crime regard to prejudice than first-degree murder of a woman sleeping in her bed. So it's the government's position that there's a clear difference of the prejudice of the two crimes, if that's what the court's asking, Your Honor. Yes, that's, because let's just say you were trying to, let's say they were flipped and he was charged with the carjacking, and, but you wanted to introduce evidence that he shot a woman in her bed several weeks before for the weapon. That would be more prejudicial than the way that we have it here, correct? That's correct. The way the evidence came in here is far less prejudicial than that, Your Honor. Well, but it's less, carjacking's a less prejudicial crime than the murder. If the murder were for the evidence to a carjacking, that presents a different argument and a better argument for prejudice, is what I'm understanding you to say, correct? That's correct. And this court has... Go ahead. I'm sorry, Your Honor. I think I understand that. I asked, the first-degree murder statute also includes a felony murder provision. Because felony murder does not require premeditation, is the statute categorically overbroad? I'm sorry, he wasn't charged with felony murder in this case. He was charged with first-degree murder and the government was required to prove premeditation. And it's not under the, it's not under Washington law, it's under the federal statute? That is correct, Your Honor. And that's how the court, that's exactly how the jury was instructed. Okay. Counsel, could I go back to ER 61? I think this is the part of the transcript you were referring to me a minute ago. And I think it's the government saying to the court, there was a little bit of a story in regards to the defendant saying he was involved in a crime, wasn't arrested that night, subsequently got arrested, and he believed she had provided the information to the police, but we don't know what exactly that person was talking about because we have no record of Ms. Metzger. The snitching that was going on had to do with the carjacking and your response was, it's a possibility from our perspective, it could have been the actual carjacking itself. If he was afraid she was going to inform the police, he shot Crystal KT and stolen her car. And then we have defense counsel's response and the judge ruled, very shortly thereafter. And it sounds, so I'm really coming back to in closing, did the other witness that you put on, would that be Mr. Culp? Mr. Culp, yes, Your Honor. Did the jury hear a third party say that the defendant was concerned about her snitching, about the carjacking? No, Your Honor. The evidence that came out regarding the snitching all came from Patrick Culp's. He testified that when he came home that day, the defendant had a gun. He said, we killed Felina Metzger because she was a snitch. So the implication was- Yes, Mr. Culp did say that to the jury. He did say that to the jury, yes, and he was cross-examined on that. He didn't specifically say what sort of snitch she was, just she was, he didn't say she was a snitch on the carjacking, is that right? He did not. Mr. Culp's advisor, he arrived, there's two armed guys standing outside of his mother's house. There's a dead body inside of a trailer and they tell him, we killed her, she's a snitch. He didn't ask any questions. He went inside of his mother's house, checked on his family to make sure they were safe. That was the evidence at the trial. And in regards to the evidence for the 404B evidence, this court has long held that the evidence is admissible if it tends to prove a material point, the prior action not remote in time, and the evidence is sufficient to support a finding the defendant committed the other act. I think two and three are really not at issue here because all this happened in March of 2016. In regards to evidence the defendant commit the crime, he admitted that under oath. So the whole issue is, does it establish a material point? And the government's position is that it does because that was his motive for the murder, was this carjacking of Crystal Tequil. Mr. Hanlon, just one more question about this transcript, if I could. I think this application that we're just reading right now, I'll go back and look at this in a more holistic way because I've got some notes here scribbled, but I think the court actually took this under advisement, said he was going to reserve ruling on the 404B until trial, is that right? That's exactly what happened, Your Honor. Okay, and then he watched the evidence roll in. Yeah, we addressed it again, I believe it was right after the jury was selected, the issue came up, we argued the issue, the evidence was admitted. So at the time the judge ruled, he had not heard Mr. Culp's testimony? That is correct, Your Honor, but he was aware of what, yes, Your Honor, thank you. That was the argument made by counsels on 404B, unless the court wanted me to address something else, I won't rest it this time. Any additional questions from my colleagues? Okay, apparently we have no additional questions. Thank you, Mr. Hanlon. All right, Mr. Markey, you have two minutes and 44 seconds. Thank you, Your Honor. In following up with the court's inquiry about the snitch statement, I would point the court to government supplemental excerpt of record of Mr. Culp's testimony. I believe it starts at SER 275. And again, there's no tie, Mr. Culp did not tie the carjacking incident with TK to Ms. Metzger. He merely said that he was told that she was a snitch, so there was no tie there. As to the court's final ruling, that is at page 112 of- Well, Mr. Markey, were you trial counsel also? Yes, I was. And Mr. Hanlon was, I'm assuming as well. So did he argue in his closing statement that the motive for the murder was that she was going to snitch him off on the carjacking? I believe he did, Your Honor. Okay. Counsel, I'm looking at SER 275 and it says there's a question, was anyone else in the vehicle with you? No. After seeing George and Neil standing outside with guns, what, if anything, did you do? Answer. Got off the car and asked them what they were- why they were holding weapons. What, if anything, did they say? Did George Cloud say to you? Answer. He said they killed Felina. Did he say why? Answer. Because she was a snitch. So your answer is they didn't tie the defendant's concern about her being an informant to the earlier carjacking. Is that right? That's correct. You know, the government, prior to the introduction of Mr. Culp's testimony, went on these two theories that she was- Mr. Cloud thought that she was a snitch. And one of two incidences, as trial progressed, we were down to the carjacking incident, could have made Mr. Cloud, you know, speculate or, you know, theorize that she was going to tie him in, as the government has argued today. And we're saying that at the time that the judge made the decision, there was nothing there to base it on that because he hadn't heard Mr. Culp. And even if Mr. Culp was utilized, he didn't tie the carjacking in. And then our other arguments of 403. But that's all I have, Your Honors. Thank you. All right. Unless my colleagues have any additional questions, you have three seconds. Nothing further, Your Honor. Thank you, Your Honor. All right. Thank you, Mr. Markey. Thank you, Mr. Hanlon. This matter will stand submitted. This court's just going to take a short recess before the last argued case. And so we'll be in recess for 10 minutes, and then we'll come back and hear the last case. Thank you.
judges: Gilman, Callahan, Christen